Steven C. Vondran, [SBN 232337]
**THE LAW OFFICES OF STEVEN C. VONDRAN, PC**
620 Newport Center Drive, Suite 1100
Newport Beach, CA 92660
Telephone: (877) 276-5084
Facsimile: (888) 551-2252
E-mail: steve@vondranlegal.com

*Attorneys for JOHN DOE assigned subscriber I.P. address 75.58.225.52*

# U.S. DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>   Plaintiff,<br><br>vs.<br><br>JOHN DOE subscriber assigned IP address, *75.58.225.52*<br><br>   Defendant.<br>_____<br>JOHN DOE subscriber assigned IP address *75.58.225.52*,<br><br>   Counterclaimant,<br><br>vs.<br><br>STRIKE 3 HOLDINGS, LLC,<br><br>   Counterdefendant. | Case No.: 8:19-cv-00334-TJH-SP<br><br>COUNTERCLAIM TO FIRST AMENDED COMPLAINT BY JOHN DOE DEFENDANT SUBSCRIBER ASSIGNED IP ADDRESS *75.58.225.52*<br><br>DECLARATION OF NON-INFRINGEMENT OF COPYRIGHT<br><br><br>**DEMAND FOR JURY TRIAL** |

  COMES NOW, the Defendant/Counterclaimant, JOHN DOE subscriber assigned IP address *75.58.225.52* ("DOE") pursuant to Fed. R. Civ. P. 13 and 15, by and through its counsel of record, and hereby counterclaims against Plaintiff, STRIKE 3 HOLDINGS, LLC, ("S3H") on the grounds described herein, and praying for the relief hereinafter set forth as follows:

## COUNTERCLAIMS OF THE DEFENDANT

By JOHN DOE subscriber assigned IP address *75.58.225.52*.

## NATURE OF THIS ACTION

1.  Strike 3 Holdings, LLC has undertaken to clog the Courts with hundreds of Copyright infringement claims seeking apparently to "protect" its copyrights from infringement. John Doe is one such defendant caught in the web of aggressive enforcement actions and is forced to incur legal fees for movies he did not download or share.

2.  John Doe hereby seeks affirmative relief that he did not infringe the works at issue so that when Plaintiff realizes it has no case and seeks to drop the litigation, Defendant can show with ease that it is the prevailing party entitled to its attorney fees.

3.  What is clear is that the S3H litigation model is not what it claims, to protect itself from copyright infringement, rather S3H has a business model to use the court system as an arm to its copyright collection activities and to seek to extract income from anyone identified as an Internet Subscriber using the "sue and settle" business model regardless of whether or not they have valid evidence to support their claims, or to even make honest allegations that would survive a Rule 11 challenge.

## JURISDICTION AND VENUE

4.  The counterclaim is brought pursuant to 28 U.S.C. § 2201. This Court is thereby vested with subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this case presents a federal question under the United States Copyright Act. These counterclaims are brought in accordance with Federal Rule of Civil Procedure 13(a)(1). The aforementioned causes of action arise out of the transactions or occurrences that are the subject matter of S3H's Complaint and do not require adding another party over which the Court cannot acquire jurisdiction.

5.  Venue is proper in that the tort of allege infringement occurred in this jurisdiction.

THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.
620 Newport Ctr., Suite 1100
Newport Beach, California 92660

## GENERAL ALLEGATIONS

6. John Doe is a simple man living a simple life. Until he was sued by S3H, John Doe had never heard of the pornographic websites: "Blacked", "Vixen", or "Tushy". John Doe does not know who downloaded these movies claimed to have been infringed, and to date, no evidence of infringement has even been presented. Instead, he was pressured to settle the case or risk facing a lawsuit. Defendant choose to stand up for what he believes in and not to give in despite knowing that recovering attorney fees as a Defendant in a copyright infringement case is never a guarantee.

## BACKGROUND

### Broadband, DMCA, and Internet Infringement

7. The rise of DSL and Cable broadband in the United States created a blessing and a curse for content owners (CO). The blessing is that CO's could distribute their works to a much larger audience. The curse for the CO's was that it was easier for people to infringe their copyrights.

8. The 1998 enactment of the DMCA struck a balance between internet service providers (ISP), (CO), and the distribution of copyrighted works. Congress provided a mechanism for CO's to provide notice to ISP's (a DMCA notice) of alleged infringements of their copyrights. This system has worked fairly well. In cases where ISP's have failed to properly "police" the DMCA notices, lawsuits have been file against ISP's that they have not followed the DMCA, and large jury awards have been entered against the ISP's. (See *BMG Rights Management, LLC, et. al v. Cox Enterprises, Inc.*, 4th Cir., 16-1972 (2018)).

9. To avoid infringement liability, many ISP's had a policy of terminating subscribers when they receive a large number of DMCA notices. The policy is not complicated – if COMCAST gets too many DMCA notices, they cut off their customer or "throttle down" their broadband service.

10. The cost of sending a DMCA notice is negligible. The CO simply sends an email

(which costs almost nothing) to the ISP.

### The IP Address, ISP Wifi Routers, and the Risk of False Positives

11. ISP's, in effort to attract more subscribers and make more money, have marketed broadband to residential customers. Residential customers are then supplied with DSL or cable modems and/or wireless routers. These modems and routers are configured in such a way that any computer in a household can use any number of computers to access the internet which is normally mapped to a single IP address. In a given household, for example, 5 or more computers, laptops and iPads may be connecting to the internet with the ability to download content.

### THE ECONOMICS OF PORNO-TROLLING

12. The porn industry, like the rest of the media industry, has benefitted from the roll-out of broadband. See *The Hidden Economics of Porn* https://www.theatlantic.com/business/archive/2016/04/ pornography- industry-economics-tarrant/476580/.

13. Numerous porn studios are or were known to produce and distribute copyrighted video works. These include such well-known names as Playboy, Penthouse, and Hustler who have migrated from the print magazine format to the Internet. None of these studios have launched large scale "Doe" campaigns of copyright infringement to Defendant's knowledge. In or around 2011 it is estimated that porn studios found that bittorrent litigation was a profitable adjunct to their regular media distribution.

### Ingenuity 13, LLC (Prenda Law), Malibu Media, and Strike 3 Holdings

14. In the decision of Honorable Otis Wright in the Central District of California, Judge Wright characterized "Porno-trolling" as:

> …They've discovered then nexus of antiquated copyright laws, paralyzing social stigma, and unaffordable defense costs. And they exploit this anomaly by accusing individuals of illegally downloading a single pornographic video. Then they offer to settle—for a sum calculated to be just below the cost of a bare-bones defense. For these individuals, resistance is futile; most reluctantly pay rather than have their names associated with illegally downloading porn. So now, copyright laws originally designed to compensate starving artists allow, starving attorneys in this electronic-media era to plunder the citizenry.

*Ingenuity 13, LLC v. John Doe,* 2:12-cv-08333-ODW-JC Document 130 Filed 05/06/13

15.  As Judge Wright noted, Porno-trolling as a business model works because the cost to initiate a lawsuit is extremely low in federal court ($400.00) and the cost to hire a copyright lawyer for the defendant can be very high ($ 300.00- $400.00 per hour or more). Retainers requested by prospective defense counsel frequently far exceed the cost to settle. When plaintiffs get any push back, they may simply dismiss under Rule 41 or just incur the nominal filing cost of $ 400.00.  Defendants meanwhile have had to be involved in the legal system – find defense counsel and pay defense counsel legal fees to defend their interest and seek to expose the scheme in Court.

### Strike 3 Holdings Torrent Monitoring and 2,000+ Lawsuits

16.  S3H is a believed to be a pornography production studio with several related entities located in the Los Angeles area of California. S3H operates three website brands: *Blacked, Tushy, and Vixen* and also believed to run a "Blacked Raw" label.

17.  S3H utilizes and has adopted the porno-trolling business model. From late 2017 to date over 2,000 lawsuits have been filed in federal courts across the country.

18.  The key to S3H's litigation strategy, is the "*Ex Parte*" motion to get early discovery from the ISP. This involves: a) a torrent monitoring company – to say they monitored the torrents;  b) an "investigator" who testifies the monitoring torrents worked c) a business owner who testifies that they had done everything in their power to control infringement and their company would go out of business unless the infringement was stopped; d) selection of high value judicial districts and exiting those districts when decisions became adversarial; e) use of "infringement stacking" to "infringement delay" to amplify damages rather than to try and mitigate damages.

    a.  These infringements are detected by torrent monitoring firm based in either Karlsruhe or Hamburg Germany, using the same "IPP". The same individual, on

information and belief believed to be Tobias Fieser, apparently "checked" the thousands of infringements for accuracy. Despite the fact that the Germans self-labelled their software as "forensic software", it is in fact untested, unvalidated open source code.

    b.    S3H's also is believed to use a "forensic investigator" of the alleged infringements and looking at a single PCAP, whose name is John Pasquale. Mr. Pasquale, according to his LinkedIn profile (currently posted on information and belief, but which may have since been changed), on information and belief works as a consultant to PNB Paribas, not at 7 River Systems, an investigation firm run out of a suburban tract home in Maryland by his son. S3H is also believed on information and belief to have engaged Susan Stalzer to "compare" infringement records and reports and to confirm infringement has occurred by a particular Defendant. On information and belief, Ms. Stalzer has no certified experience in either the forensics industry and may never have served as an expert witness.

    c.    S3H on information and belief, only sues in a small number of targeted judicial districts where the income of the defendants is believed to have a high net worth (for example, California, Texas, Illinois, New York, and Colorado). Even within those districts, defendants were isolated based on the high net worth of the districts and this is why Plaintiff pressures these individuals to settle, usually coming out of the settlement gate with an unsolicited offer to settle as high as $50,000. This is designed to scare the living daylights out of a Defendant and to force them to settle whether they did the downloads or not.

    d.    S3H is also believed to use "infringement stacking" to "infringement delay" to amplify damages rather than to try and mitigate damages. Meaning, they may learn of infringement in January of 2019 and do nothing but wait for more infringements to rack up to try to bolster their case for money damages.

  e. Defendant alleges on information and belief that S3H has never sent a DMCA notice (letter, text or email) to the IP address of the purported infringing defendant.

  f. S3H, (like its lawsuit competitor Malibu Media), on information and belief also promotes the wide distribution of "free" versions of their movies on such sites as "Pornhub" whose marketing model is that the consumer can watch "free porn." So, on one hand they want people to enjoy free porno, and on the other likes to profit from this activity.

19. S3H also is believed on information and belief to distribute DVD's. These DVD's are compilations of the shorter clips that are at issue in these infringements. These DVD's are on information and belief believed to not clearly indicate the owner of the films is "Strike 3 Holdings". These DVD's also have the "copyright warning notice" at the beginning of the films, which, oddly enough, is not believed to be present on the videos on the website of *Vixen, Blacked, and Tushy.*

### COUNT I DECLARATION OF NON-INFRINGEMENT OF COPYRIGHT

20. DOE realleges paragraphs 1-19 above as fully set forth herein.

21. A case and controversy exist between S3H and DOE regarding the alleged infringement of the works that S3H allegedly owns and has allegedly copyrighted.

22. S3H alleges that DOE has infringed many of its copyrighted works as attached to their complaint. These works are believed to be approximately 30-40 minutes in length and involve graphic pornography that is marketed under the *Vixen, Tushy*, *Blacked Raw*, and *Blacked* website brands.

23. DOE's did not infringe and categorically denies the allegations of infringement, or any works marketed or owned by S3H.

24. DOE has not infringed any of S3H's rights under 17 U.S.C. § 106 nor has DOE has not infringed any of S3H's rights under 17 U.S.C. § 501.

25. DOE requests that the Court entered a judgment of non-infringement as to the works that S3H alleges DOE to have infringed.

26. Absent a declaration of non-infringement DOE has an objectively reasonable apprehension of becoming the target of another lawsuit on the claims alleged here, or similar claims by this Plaintiff.

27. Dismissal of this lawsuit without prejudice is inadequate to vindicate DOE's rights.

28. DOE is entitled to a declaratory judgment of non-infringement, to his costs and attorneys' fees as a prevailing party pursuant to 17 U.S.C. § 505 and to such other and further relief as may be appropriate.

29. DOE has been damaged as a result of S3H's aggressive actions and campaign of abuse of process.

**DOE'S PRAYER FOR RELIEF**

DOE respectfully prays and judgment entered as follows:

**COUNT I – Declaratory Judgment of Non-Infringement**

A. A declaration and entry of judgment that S3H claim for infringement be denied in their entirety and take nothing;

B. DOE is the prevailing party under the Copyright Act;

C. DOE be entitled to statutory attorney fees under the Copyright Act;

D. DOE be entitled to costs of suit; and

E. DOE be entitled to any other relief that this Court may allow.

8

JOHN DOE COUNTERCLAIM

| | |
|---|---|
| DATED: October 10, 2019 | THE LAW OFFICES OF STEVEN C. VONDRAN |

                                                        By:    /s/ Steven C. Vondran
                                 Steven C. Vondran, Attorney for JOHN DOE
                                   620 Newport Center Drive, Suite 1100
                                       Newport Beach, CA 92660
                                         Phone: (877) 276-5084
                                      Facsimile: (888) 551-2252
                                        steve@vondranlegal.com

# CERTIFICATE OF SERVICE

I, Lisa Vondran, hereby certify that on October 10, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Service List

Judge Terry J. Hatter
350 W. 1st Street
Court Room 9B
9th Floor
Los Angeles, CA 90012

Law Offices of Lincoln Bandlow
1801 Century Park East, Suite 2400
Los Angeles, California 90067
Lincoln@bandlowlaw.com

*Attorneys for Plaintiff Strike 3 Holdings LLC*

DATED this 10th day of October 2019 at Phoenix, Arizona.

By: /s/ Lisa Vondran
　　　　Lisa Vondran